JOHNNY L. HARDEMAN,          )
                             )
                             )
            Plaintiff,       )
                             )
v.                           )          **No. CIV 08-086-RAW-SPS**
                             )
**CHARLES SANDERS, et al.,** )
                             )
            Defendants.      )

MAR - 5 2009

WILLIAM B. GUTHRIE
Clerk, U.S. District Court

By_____
        Deputy Clerk

## OPINION AND ORDER

This action is before the court on Defendants Morgan, Brown, and Sanders's motion to dismiss or for summary judgment. The court has before it for consideration plaintiff's complaint [Docket #1], his "clarification" of the record [Docket #8, #9, and #10], the defendants' motion [Docket #21], plaintiff's response [Docket #37], and a special report prepared by the Oklahoma Department of Corrections (DOC) at the direction of the court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) [Docket #22].

Plaintiff, an inmate in the custody of DOC who is incarcerated at Oklahoma State Penitentiary (OSP) in McAlester, Oklahoma, brings this action under the authority of 42 U.S.C. § 1983, seeking injunctive relief and monetary damages for alleged constitutional violations during his incarceration at OSP and Mack Alford Correctional Center (MACC) in Stringtown, Oklahoma. The defendants are Charles Sanders, MACC Correctional Officer; Steven Carter, DOC Internal Affairs Investigator; Greg Provence, MACC Warden; OSP Deputy Warden Linda Morgan, Administrative Segregation Board Chairman; and Chad

Brown, OSP Case Manager.[1], [2]

Plaintiff alleges that on March 27, 2007, he went to see MACC Unit Manager Reggie Green and filed a complaint that Defendant MACC Correctional Officer Charles Sanders had forced plaintiff to perform oral sex on him. According to plaintiff, the incident occurred when he went into Sanders' office to make copies, and Sanders locked the doors and forced plaintiff to engage in the sexual act. Plaintiff asserts Unit Manager Green said he believed plaintiff's report, and Green promised not to allow retaliation against plaintiff.

On March 29, 2007, plaintiff was called in to speak with Defendant Carter, the Internal Affairs Investigator. Carter allegedly told plaintiff their conversation was being recorded, and plaintiff told Carter about the incident with Officer Sanders. Carter then asked plaintiff in a loud, harsh tone whether Officer Sanders knew that plaintiff was HIV positive, and plaintiff said Sanders did not know. Plaintiff claims he felt attacked by Carter's questioning, and Carter told plaintiff that he better not find out that plaintiff had done anything wrong. Stunned by Carter's attitude, plaintiff said that Officer Sanders had raped him, and then Carter told plaintiff to leave. Plaintiff told Carter and Unit Manager Green that Inmate Stanley Butler had witnessed Sanders' attempt to give plaintiff a tobacco product as hush money and as payment for sexual favors.

---

[1] To the extent the defendants are sued in their official capacities as DOC officials, plaintiff's claims are barred by the Eleventh Amendment. It is well settled that a damages suit against a state official in his official capacity is merely another way of pleading an action against the State. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). *See also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1988) (state officials sued in their official capacities are not "persons" for purposes of a § 1983 suit, because the suit is against the official's office and not against the official).

[2] Defendant Carter no longer is employed by the DOC and has not been served.

2

Investigator Carter interviewed Inmate Stanley Butler, and Butler later told plaintiff that Carter had disclosed everything plaintiff had reported. Plaintiff maintains his interview with Carter was confidential, and he became fearful he would be labeled a snitch. After Butler's interview, Carter began calling plaintiff's former cell partners, friends, and other homosexuals to the interview room. Carter alleged asked each inmate whether he had had sexual relations with plaintiff and advised each that plaintiff was infected with HIV. Carter also asked the inmates if they knew anybody who had had sex with plaintiff and told them that plaintiff had filed a complaint against a facility officer. Plaintiff insists that these interviews violated his medical privacy rights.

Plaintiff was at work when Investigator Carter called Inmates Kenneth Brice, K.C., Shayne, and Johnson. Each one subsequently came to plaintiff and said they were very upset. Plaintiff became "mentally and emotionally anguished" and scared for his life. Plaintiff learned that Carter interviewed many other inmates on March 29, 2007, and told them about plaintiff's confidential medical history.

On that same day, plaintiff was placed in segregation without notice or explanation, and on April 5, 2007, he was transferred to OSP, a maximum security prison, allegedly in retaliation for his complaint against Officer Sanders. He was not charged with a misconduct and had minimum security points, so he claims there was no reason for the abrupt transfer to a high security facility. Upon reception at OSP he was placed in segregation, and he lost his Level 4 earned credit status and all other rights and privileges. He remained in segregation for 61 days without explanation, and was taken to an administrative segregation board hearing on June 4, 2007. Plaintiff asked Defendant Administrative Segregation Board Chairman Linda Morgan why he was at OSP and in segregation, and Morgan replied she did

not know. Plaintiff told Morgan he believed he was transferred and placed in segregation because of his complaint against Officer Sanders, but Morgan said she knew nothing of the complaint. The unit manager at the meeting showed Morgan a form stating the reason for plaintiff's transfer, and Morgan said plaintiff was at OSP for holding. Plaintiff was returned to segregation, and on June 22, 2007, he was moved to long-term administrative segregation.

Plaintiff sent Linda Morgan a Request to Staff (RTS) asking why he was placed in long-term administrative segregation. Defendant OSP Case Manager Chad Brown told plaintiff he was in administrative segregation, because he had engaged in sexual activity at MACC when he had a medical condition. Plaintiff complains he never has been charged with any sexual misconducts with an inmate at MACC, with or without a medical condition. He asked Brown for restoration of his Level 4 earned credit status and other privileges, but Brown refused because of the sexual misconduct allegations. Plaintiff claims Defendant Morgan lied to him at the administrative hearing about the reason for his transfer, and Morgan and Defendant Brown retaliated against him for filing the sexual assault complaint against a correctional officer.

## Special Report

The special report states that on March 28, 2007, MACC Case Manager Reggie Green sent an email to MACC Deputy Warden Anita Trammell concerning plaintiff's allegations that about three months earlier, an officer had taken him to a restroom and raped him. Plaintiff allegedly told Green that he believed the officer would pay plaintiff not to report the incident. Plaintiff also stated to Green that Inmate Butler had knowledge of the incident, and another inmate had claimed to have been sexually involved with the officer. Green further stated in his email that he advised plaintiff that he would report the incident to Major McGee

4

and Deputy Warden Trammel. On the same date as the email, Deputy Warden Trammell sent an interoffice memorandum to Johnny Blevins, Administrator of Internal Affairs, requesting a Level II investigation of plaintiff's allegations.

On March 29, 2007, plaintiff submitted a RTS to MACC Warden Greg Province about the allegations and investigation. Warden Province's April 3, 2007, response advised that the investigation was ongoing and that plaintiff should discuss any issues with Investigator Carter. Plaintiff was transferred to OSP on April 5, 2007.

On April 19, 2007, Debbie Mahaffey, Deputy Director of Treatment and Rehabilitative Services, received a letter from plaintiff and forwarded it to Johnny Blevins, Administrator of Internal Affairs. Plaintiff stated in the letter that Investigator Carter had turned the investigation against him and retaliated against him for reporting the sexual assault. He complained that Carter had discussed the incident with Inmate Butler and that Carter had revealed plaintiff's HIV status to about 20 other inmates. He further stated that his transfer to OSP was in retaliation for his allegations against Officer Sanders.

On April 30, 2007, MACC Warden Province responded to plaintiff's letter and advised him that he was transferred to OSP because of the Internal Affairs investigation and for plaintiff's own safety. Warden Province further stated that it would be premature for him to comment on plaintiff's allegations until the investigation was completed.

On May 24, 2007, Warden Province received a RTS and grievance through the mail from plaintiff, stating plaintiff had not received a response to an April 2, 2007, RTS. Plaintiff also sent a grievance to Warden Province on May 24, 2007, complaining that the investigator's actions were retaliatory and requesting a transfer back to MACC and then to another medium security facility.

5

On June 1, 2007, Warden Province responded to the May 24, 2007, grievance, and advised plaintiff that the investigation had cleared Officer Sanders of any wrongdoing. Warden Province further stated that plaintiff was transferred to OSP because of an Internal Affairs investigation indicating plaintiff's activities in conjunction with his medical condition constituted a clear danger to the security, control, and safety of the facility, pursuant to DOC OP-060204 regarding inmate transfers:

Those identified as HIV positive who have been counseled by medical staff and continue sexual activity or intravenous drug abuse, will be assigned and transferred to Oklahoma State Penitentiary (OSP) or Mabel Bassett Correctional Center (MBCC). Documentation in the form of a misconduct report for sexual activity or drug abuse, a statement of self-admittance, or through [sic] documented evidence on the "Inmate Behavioral Risk Encounter" form will be required.

On July 16, 2007, Johnny Blevins, Administrator of Internal Affairs, issued plaintiff a response to his correspondence regarding the outcome of the investigation. Administrator Blevins stated that the outcome of the investigation was confidential, but it had been determined through the investigation that plaintiff had sex with several MACC inmates, knowing he was diagnosed with HIV in 2001. Plaintiff was transferred to OSP to prevent him from exposing other inmates to HIV, not as a form of retaliation.

The special report further states that plaintiff was received at OSP on April 5, 2007, where he was housed in the Restrictive Housing Unit until June 22, 2007, when he was moved to Administrative Segregation Housing. At the time of the special report, he still was housed in administrative segregation. Contrary to plaintiff's allegations that he was placed in segregation for no reason, the defendants state he was sent to OSP and placed in segregation because of the DOC Internal Affairs investigation.

6

Plaintiff filed Grievance #07-151, which was returned unanswered, because it raised more than one issue. He also filed Grievance #07-171, which was returned unanswered because it did not include a Request to Staff. On September 7, 2007, Director's Designee Debbie Morton advised plaintiff by memorandum that his Grievance #07-1756 concerning his long-term administrative segregation was being investigated, and plaintiff would be notified of the results. An Administrative Segregation Report of Hearing dated June 15, 2007, recommended plaintiff's placement in administrative segregation, based on the MACC Internal Affairs investigation.

## Internal Affairs Investigative Report

The investigation documents submitted as part of the special report indicate plaintiff claimed that while he was incarcerated on the MACC Disciplinary Unit, he attempted to tell Case Manager Jerry Elrod about the alleged rape by giving Elrod a letter. Elrod read part of the letter and returned it to plaintiff in his cell. Plaintiff also stated he told Amy Mauk, MACC Psychological Clinician, about the incident, but Mauk did not forward the information to anyone.

Jerry Elrod recalled speaking to plaintiff about the alleged rape. Elrod was seeing inmates in the Disciplinary Unit when plaintiff handed him a note addressed to Reggie Green. Elrod read enough of the note to tell that plaintiff was alleging a rape, but he could not remember whether he took the letter or returned it to plaintiff. Elrod stated he thought he had told Reggie Green about the incident, but he was not certain. Reggie Green, MACC Case Manager, did not recall Elrod's speaking with him about plaintiff. Green said he had no knowledge of the alleged rape until plaintiff told him on March 27, 2007. There was sufficient evidence to indicate Elwood violated DOC OP-110701 by failing to report

7

immediately any suspected act or allegation of sexual misconduct or retaliation.

Amy Mauk remembered talking to plaintiff when she was speaking with inmates in the Disciplinary Unit. Mauk said plaintiff complained about his case manager and unit manager, but he never mentioned anything about having been raped. She said she reports all allegations of sexual assault and would remember if plaintiff had alleged that an officer raped him.

Plaintiff also allegedly told another inmate that Sanders took him into the bathroom and raped him. Plaintiff allegedly said he knew he could not transfer to another yard because he had so many separatees, but he knew he would be moved if he made allegations against the staff.

On March 29, 2007, Investigator Carter and Greg Province contacted MACC Lieutenant Lewis Layton and MACC Captain Dale Morgan, who provided a list of inmates who were possible associates of plaintiff. Most of the inmates denied having had any type of sexual contact with plaintiff. Other MACC inmates, however, admitted to having sexual contact with him, and they were seen immediately by a physician and by psychological services.

Investigator Carter also contacted Mike Mulllin, Warden of Jess Dunn Correctional Center, about an inmate at that facility who may have had sexual contact with plaintiff. That inmate told Carter that while incarcerated at MACC, he performed sex acts on plaintiff on approximately six occasions. The inmate immediately was sent to medical and psychological services at his facility.

Carter interviewed another MACC inmate who said he and plaintiff were a "couple" for approximately six months, and they had sex on at least six occasions, beginning about a

8

year before the investigation. The inmate stated plaintiff did not tell him he had any communicable disease, and he know of several other inmates on the yard who could have had sexual contact with plaintiff.

Investigator Carter interviewed MACC Sergeant Charles Sanders, who denied having sexual contact with plaintiff or bringing any type of contraband into MACC. Carter advised Sanders to seek immediate medical attention, if there had been any sexual contact. Sanders laughed and said he was positive he did not need medical attention, and he never had sexual relations with inmates. Sanders had heard rumors that plaintiff was saying they had a sexual encounter, but Sanders considered it just another inmate rumor and was not concerned. Plaintiff provided different versions of the story to Carter and Reggie Green, and he told other inmates that the story was not true. The investigation concluded there was not sufficient evidence to indicate Sanders forced plaintiff to commit a sexual act or provided any inmate with contraband.

Investigator Carter was able to substantiate that plaintiff had been sexually active after learning on July 25, 2001, that he was HIV positive. Plaintiff had been instructed about HIV and its consequences. Based on the investigation, it was determined that plaintiff had violated DOC OP-060125 for engaging in sexual activity, and Okla. Stat. tit. 21 § 1192.1, by knowingly intending to transfer HIV. Pursuant to DOC OP-060204, plaintiff was transferred to OSP for his continued sexual activity after having been counseled about his HIV status. A copy of the investigator's report was forwarded to the Atoka County District Attorney.

## Motion for Summary Judgment

Defendants Morgan, Brown, and Sanders have moved the court for dismissal of the

9

action or in the alternative for summary judgment. Having moved for summary judgment in their favor, the defendants are required to show the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c). Their initial burden is to show the absence of evidence to support plaintiff's case. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The defendants must identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" which establish the absence of any genuine issue of material fact. *Id*. The defendants need not negate plaintiff's claim or disprove plaintiff's evidence, but rather, the defendants' burden is to show there is no evidence in the record to support plaintiff's claim. *Id*. at 325. Plaintiff, as the nonmoving party, must go beyond the pleadings and by way of affidavits or "depositions, answers to interrogatories, and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Summary judgment is not appropriate if there exists a genuine material factual issue such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51 (1986). In this regard, all evidence of the nonmoving party is deemed true, and all reasonable inferences are drawn in favor of the nonmoving party. *Id*. at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 114, 158-59 (1970)). This court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. at 249. With these standards in mind, the court turns to the merits of the defendants' motion.

## Counts I and II

Plaintiff alleges in Counts I and II that the release of his confidential medical information to other inmates without his consent after the interview with Investigator Carter

10

caused the intentional infliction of emotional distress, in violation of the United States Constitution, the Americans with Disabilities Act, Oklahoma Statutes, and prison policies. Defendants Morgan, Brown, and Sanders do not deny the disclosure, but maintain plaintiff has failed to allege their personal participation.

"Personal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (citations omitted). *See also Mee v. Ortega*, 967 F.2d 423, 430 (10th Cir. 1992). Further, "[s]ection 1983 will not support a claim based on a respondeat superior theory of liability." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981).

The court has carefully reviewed the record and construes plaintiff's pleadings liberally. *Haines v. Kerner*, 404 U.S. 519 (1972). Plaintiff, however, accuses only Defendants Carter and Provence of violating the confidentiality of his medical records, and there are no allegations that Defendants Morgan, Brown, or Sanders revealed plaintiff's HIV status to other inmates. Therefore, summary judgment is granted to Defendants Morgan, Brown, and Sanders on Count I and Count II.

**Count III**

Petitioner alleges in Count III that the defendants retaliated against him in violation of the Constitution, the Americans with Disabilities Act, and prison policies for his reporting Defendant Sanders' alleged sexual assault. He claims he was transferred to OSP, confined in segregation, and further punished with loss of privileges and property, because he accused Sanders of serious sexual misconduct. He complains that the reason for his transfer was invalid, because he never received a misconduct at MACC for sexual activity with another inmate.

Defendants Morgan, Brown, and Sanders assert plaintiff has not alleged their personal

11

participation in his transfer to OSP, or that Sanders had any involvement in plaintiff's assignment to restrictive housing or administrative segregation. The defendants also claim the decision to transfer plaintiff and his placement in segregation did not violate his constitutional rights, and the prison's internal management procedures do not confer any rights on him.

It is well settled that there is no constitutional right to incarceration in a particular correctional facility. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983). In addition, there are no state laws or prison regulations creating either a right or an expectation for a prisoner to remain in a particular prison or classification to which he has been assigned, and no due process hearing is required in conjunction with a transfer to a different facility. *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Meachum v. Fano*, 427 U.S. 215 (1976). Such transfers are within the discretion of the corrections officials. *Twyman v. Crisp*, 584 F.2d 352, 355-357 (10th Cir. 1978).

"[T]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478 (1995). "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montayne v. Haymes*, 427 U.S. 236, 242 (1976). "It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983).

Furthermore, a plaintiff alleging retaliation for his exercise of constitutional rights

12

"must prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990) (quoting *McDonald v. Hall*, 641 F.2d 16, 18 (1st Cir. 1979)). "[I]t is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice; plaintiff[] must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990).

The record shows that plaintiff's report of the alleged sexual assault by Officer Sanders led to an investigation revealing plaintiff's sexual misconduct with other inmates. It was his behavior and history that resulted in his transfer to OSP and placement in segregation. His conduct placed numerous inmates at risk of contracting HIV, and plaintiff's safety was at risk, should any of the affected inmates decide to confront him. As discussed above, the investigation revealed that plaintiff had violated DOC policy and possibly a state statute by engaging in sexual activity with the knowledge he was HIV positive, and he was transferred to OSP and placed in segregation in accordance with DOC policy concerning his behavior. The court finds plaintiff has failed to show the defendants' retaliatory motive and that there is a genuine issue for trial with respect to Ground III of the complaint.

## Count IV

Plaintiff alleges in Count IV that Defendant Charles Sanders violated the Eighth Amendment by forcing plaintiff to perform oral sex. Defendant Sanders argues the alleged act "only exists in the mind of the Plaintiff and [was] created in all likelihood in an attempt to be transferred from MACC, but it backfired on the plaintiff." Sanders further asserts there is "not even a scintilla of evidence" supporting plaintiff's claim, and plaintiff has failed to

13

state a claim upon which relief may be granted.

The Internal Affairs Investigative Report set forth plaintiff's allegations against Sanders, and Sanders denied the accusation. Without more than this, the court finds Defendant Sanders has failed to show there is no evidence in the record to support plaintiff's claim. *Celotex*, 477 U.S. at 325. Deeming plaintiff's allegations as true and drawing all reasonable inferences in his favor, the court finds there exists a genuine material factual issue. *Anderson*, 477 U.S. at 249-51, 255. Therefore, summary judgment cannot be granted on Ground IV.

## Americans with Disabilities Act

Finally, plaintiff makes conclusory claims throughout his complaint that the defendants' actions violated the Americans with Disabilities Act, of 1990 (ADA), 42 U.S.C. § 12101. He apparently is claiming his transfer to OSP and his placement in segregation were acts of discrimination, based on his disability.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "State prisons fall squarely within the statutory definition of 'public entity,' which includes 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'" *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (quoting 42 U.S.C. § 12131(1)(B))). "To state a claim under Title II, the plaintiff must allege that (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of

14

a disability. *Robertson v. Las Animas County Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007) (citing 42 U.S.C. § 12132; *Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 283 (1st Cir. 2006)).

> A disability within the meaning of the ADA is, *inter alia*, "a physical or mental impairment that substantially limits one or more of the major life activities" of an individual. 42 U.S.C. § 12102(2)(A). Individuals attempting to prove disability status under this test may not merely rely on evidence of a medical diagnosis of an impairment. "Instead, the ADA requires those 'claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial.'" *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002) (quoting *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999)).

*Robertson*, 500 F.3d at 1193-94.

It is uncontested that plaintiff has been diagnosed with HIV, which is a disability under the ADA. *See Bragdon v. Abbott*, 524 U.S. 624 (1998). Plaintiff, however, has not shown the extent of the limitation caused by his illness, and his conclusory allegations of an ADA violation will not suffice. *See Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981). Engaging in unprotected sex in prison by an HIV-positive inmate is not a major life activity that is protected from placement in more secure housing to control the behavior. *See Johnson v. Santa Clara County*, No. C 02-3279-SI, slip op., 2003 WL 22114269 at *4 (N.D. Cal. Sept. 5, 2003) (holding that engaging in sexually violent criminal behavior was not a "major life activity" under ADA). Plaintiff clearly has failed to meet his burden of proving a violation of the ADA. Defendants Morgan, Brown, and Sanders are granted summary judgment on this claim.

**ACCORDINGLY,** Defendants Linda Morgan and Chad Brown's motion for summary judgment [Docket #21] is GRANTED on all claims, and Defendants Morgan and

15

Brown are DISMISSED from this action. Defendant Charles Sanders' motion for summary judgment is GRANTED on Counts I, II, and III, and DENIED on Count IV.

**IT IS SO ORDERED** this ⁵ᵗᴴ day of March 2009.

*Ronald A. White*

**RONALD A. WHITE**
**UNITED STATES DISTRICT  JUDGE**