IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA



MAR 1 9 2010

WILLIAM B. GUTHRIE
Clerk U.S. District Court
By_____
Deputy Clerk

JOHNNY L. HARDEMAN, )
)
Plaintiff, )
)
v. ) No. CIV 08-086-RAW-SPS
)
CHARLES SANDERS, et al., )
)
Defendants. )

## OPINION AND ORDER

This action is before the court on motions to dismiss or for summary judgment by Defendants Greg Province, Steve Carter, and Charles Sanders [Docket #79, #87, and #105]. The facts of the case were forth in the court's previous order of March 5, 2009 [Docket #49]. Plaintiff alleges Defendant Sanders, a correctional officer at Mack Alford Correctional Center (MACC), forced plaintiff to perform oral sex on him, while plaintiff was incarcerated at that facility. Plaintiff also alleges Defendant Carter, who was the internal affairs investigator for the Oklahoma Department of Corrections (DOC), revealed to DOC personnel and to other inmates that plaintiff is HIV positive, violating plaintiff's medical privacy rights. Defendant MACC Warden Province allegedly transferred plaintiff to Oklahoma State Penitentiary (OSP) and assigned plaintiff to segregation, in retaliation for plaintiff's allegations against Defendant Sanders.

Plaintiff alleges in Counts I and II of his complaint that the release of his confidential medical information to other inmates without his consent caused the intentional infliction of emotional distress, in violation of the United States Constitution, the Americans with

Disabilities Act (ADA), Oklahoma Statutes, and prison policies. He claims in Count III that the defendants transferred him to OSP and confined him in segregation, in violation of the Constitution, the ADA, and prison policies, all in retaliation for his reporting Defendant Sanders' alleged sexual assault. He claims in Count IV that Defendant Sanders violated the Eighth Amendment by forcing plaintiff to perform oral sex. The court's previous order found that plaintiff had failed to state a claim under the Americans with Disabilities Act, and the order granted summary judgment to Defendant Sanders on Counts I, II, and III [Docket #49 at 14-16].

## Defendant MACC Warden Greg Province

Plaintiff alleges that on April 5, 2007, after he reported the alleged sexual assault, Defendant Province transferred him to OSP, a maximum security prison, where he was placed in segregation. Plaintiff lost his earned credit level of Level 4, as well as all his other rights and privileges. No DOC employee explained to plaintiff why he had been transferred and assigned to segregation, where he remained for 61 days. On June 5, 2007, he was taken to an administrative segregation board hearing where the chairperson Linda Morgan said she did not know why plaintiff had been transferred and placed in segregation. On June 22, 2007, he was moved to long-term administrative segregation.

Plaintiff asserts Defendant Province's actions concerning the transfer and the release of confidential medical information violated the Americans with Disabilities Act, the DOC inmate transfer policy, and the First and Fourteenth Amendments. He also claims Province ordered prison employees to "round up" plaintiff's "associates, friends, cell partners, and other homosexuals to question them about having sex with the plaintiff or any incriminating information on the plaintiff" [Docket #81 at 1]. Plaintiff contends he was transferred to OSP

and placed in segregation in retaliation for reporting the sexual assault. He never was charged with a sexual misconduct while he was at MACC.

Defendant Province has moved for summary judgment or dismissal [Docket #79]. He states by affidavit that he requested the internal affairs investigation when plaintiff alleged he had been sexually assaulted by a prison staff member. Defendant Province does not deny discussing plaintiff's medical status with Defendant Carter, the internal affairs investigator. Plaintiff's conduct put a number of inmates at risk of contracting a serious disease, and there is the additional risk that inmates who have been exposed to HIV could decide to confront him. Plaintiff, therefore, is a significant security risk. The transfer was based on information discovered during the investigation that plaintiff was sexually active with other inmates, and he was not transferred in retaliation for his accusations. DOC procedures provide for the assignment of inmates engaging in risky sexual behavior to be transferred to OSP to provide a more structured environment and to prevent the spread of HIV/AIDS.

## Defendant Internal Affairs Investigator Steve Carter

Defendant Carter, former DOC Internal Affairs Investigator, also has filed a motion to dismiss or for summary judgment [Docket #87]. Carter states by affidavit that on March 29, 2007, he was instructed to investigate an alleged sexual assault on plaintiff by Defendant Sanders. Upon Carter's arrival at MACC, he was briefed by Warden Province and learned plaintiff was HIV positive. Carter's investigation included interviewing plaintiff, numerous other inmates, and staff members. Carter learned that plaintiff had told another inmate that if plaintiff made allegations against facility staff, he could get transferred to another facility. During the interviews Carter also learned that plaintiff was sexually active with other inmates at MACC.

3

Plaintiff alleges several inmates told him that Defendant Carter revealed plaintiff's HIV status during the investigative interviews [Docket #93]. Carter maintains in his affidavit that he did not advise any of the inmates he interviewed that plaintiff was HIV positive, and Carter is unaware of other staff member's communicating this information to the inmates. Carter did question the inmates about whether Defendant Sanders had been sexually active with plaintiff. Any inmates who admitted sexual activity with plaintiff were referred to medical for testing and psychological services, but they were not told the reason for the referral. Carter states that DOC policy and state law requires referrals for medical testing and counseling for persons who have been exposed to sexually transmitted diseases. Carter denies he was involved in plaintiff's transfer to OSP, because as an investigator he had no authority to order any inmate's transfer.

Plaintiff asserts in his response to Carter's motion [Docket #92] that Carter either intentionally or negligently informed each interviewed inmate that plaintiff had a medical condition. Plaintiff states he is an "open gay homosexual" in a facility where the residents believe AIDS is a gay disease. Therefore, when Carter inquired whether the inmates had had sex with plaintiff and then sent those inmates for medical services, plaintiff's medical information indirectly was revealed. Plaintiff also claims that Carter had the authority to authorize or suggest that an inmate be transferred to a different security level, as evidenced by Carter's signature on the form transferring plaintiff to OSP.

**Defendant Officer Charles Sanders**

Defendant Sanders has filed a second motion to dismiss on the remaining Eighth Amendment claim that he forced plaintiff to perform oral sex on him [Docket #105]. Sanders denies in his affidavit that the incident occurred, and asserts plaintiff has changed

4

his version of the incident, adding details that the sex act caused him to bleed and that Defendant Sanders attempted anal sex. Plaintiff admitted in his deposition that he has no evidence to support his claims against Sanders.

**Americans with Disabilities Act**

As more fully discussed in the court's previous order, plaintiff claims the defendants' actions violated the Americans with Disabilities Act, of 1990, 42 U.S.C. § 12101 [Docket #49 at 14-15]. While plaintiff has been diagnosed with a disability under the ADA, his conclusory allegations of an ADA violation do not suffice against the remaining defendants. Engaging in unprotected sex in prison by an HIV positive inmate is not a major life activity that is protected from placement in more secure housing to control the behavior. *Johnson v. Santa Clara County*, No. C 02-3279-SI, slip op., 2003 WL 22114269 at *4 (N.D. Cal. Sept. 5, 2003) (holding that engaging in sexually violent criminal behavior was not a "major life activity" under ADA). The court finds plaintiff has failed to meet his burden of proving a violation of the ADA.

**Exhaustion of Administrative Remedies**

Defendants Province, Carter, and Sanders all allege plaintiff has failed to exhaust his administrative remedies for the remaining claims in this lawsuit. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the

grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). In deciding a motion to dismiss based on nonexhaustion, the court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007).

The procedure for exhausting administrative remedies is set forth in DOC Policy OP-090124, "Offender Grievance Process," available at http://www.doc.state.ok.us/. An inmate first must attempt to resolve his complaint informally. If that is unsuccessful, he may submit a Request to Staff (RTS) within seven calendar days of the incident. If the complaint still is not resolved, he then may file a grievance within 15 calendar days of the incident, or the date of the response to the RTS, whichever is later. If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority or the Chief Medical Officer, whichever is appropriate, within 15 calendar days of receipt of the reviewing authority's response or any amended response. The administrative process is exhausted only after all of these steps have been taken.

The special report from MACC shows that on March 29, 2007, plaintiff submitted a Request to Staff to Warden Greg Province concerning the allegations, the ongoing investigation, and alleged retaliation [Docket #22, Part A, Attachment 4]. Province responded on April 3, 2007, advising that the investigation still was pending and that plaintiff needed to discuss any issues with Investigator Carter. *Id.* On April 23, 2007, Debbie Mahaffey, Deputy Director of Treatment and Rehabilitative Services, received a letter from plaintiff and forwarded it to Johnny Blevins, Administrator of Internal Affairs at Mack

Alford Correctional Center. *Id.* at Attachment 5. Plaintiff stated in the letter that the investigator had turned the investigation against him and had retaliated against him for reporting the sexual assault. *Id.*

On April 30, 2007, Warden Province responded to plaintiff's letter to Debbie Mahaffey. *Id.* at Attachment 6. Province advised plaintiff that he was transferred to OSP on April 5, 2007, because of an Internal Affairs investigation and for plaintiff's own safety. *Id.* Province's response also informed plaintiff that it would be premature to take any action until the Internal Affairs investigation had been completed. *Id.*

On May 24, 2007, Warden Province received a Request to Staff from plaintiff through the mail. *Id.* at Attachment 7. The RTS stated plaintiff had filed a previous RTS to Province's office on or about April 2, 2007, but it had not been answered. *Id.* The May 24, 2007, RTS stated plaintiff was attaching the earlier RTS and a grievance for Warden Sirmons' answer. *Id.* OSP Warden Marty Sirmons had attempted to respond, but the RTS was not addressed to Sirmons. *Id.* The grievance received by Warden Province on May 24, 2007, stated the investigator's actions were in retaliation for reporting the assault by Charles Sanders. *Id.* at Attachment 8. Plaintiff asked to be returned to MACC and then transferred to another medium security facility. *Id.*

On June 1, 2007, Warden Province responded to plaintiff's May 24, 2007, grievance. *Id.* at Attachment 9. Province stated that plaintiff's RTS mentioned in his grievance was answered on April 3, 2007. *Id.* Plaintiff further was advised that he was transferred to OSP because the Internal Affairs investigation showed that plaintiff's activities, in conjunction with his medical condition, "constituted a clear danger to the security, control, and safety of the facility." *Id.* Province quoted the portion of OP-060204 regarding priority transfers of

inmates:

> Those identified as HIV positive who have been counseled by medical staff and continue sexual activity or intravenous drug abuse will be assigned and transferred to Oklahoma State Penitentiary (OSP) or Mabel Bassett Correctional Center (MBCC). Documentation in the form of a misconduct report for sexual activity or drug abuse, a statement of self-admittance, or through documented evidence on the "Inmate Behavioral Risk Encounter" form will be required.

*Id.* In addition, Sergeant Sanders had been cleared of any wrongdoings in the investigation. *Id.*

On July 16, 2007, Johnny Blevins, Administrator of DOC Internal Affairs sent plaintiff a letter in response to plaintiff's correspondence about the Internal Affairs investigation. *Id.* at Attachment 10. Blevins stated that the results of the investigation were confidential, but it had been determined that despite plaintiff's knowledge of his 2001 HIV diagnosis, he had sex with several inmates at Mack Alford Correctional Center. *Id.* Plaintiff was transferred from MACC, not in retaliation, but to ensure he did not expose additional inmates to the disease. *Id.*

The special report from OSP indicates plaintiff filed two grievances that were returned for corrections. On June 29, 2007, plaintiff submitted a Request to Staff to OSP Deputy Warden Linda Morgan regarding his transfer to OSP, his placement in long-term administrative segregation, and the investigation of plaintiff's allegations of sexual assault. [Docket #22, Part B, Attachment 4 at 11]. On July 27, 2007, he sent a grievance to OSP Warden Marty Sirmons complaining his Requests to Staff, in particular the June 29, 2007, RTS to Linda Morgan, had not been answered. *Id.* at 10. He requested his immediate restoration to Earned Credit Level 4 "with all rights and privileges" and a transfer to a

medium security facility. *Id.* at 10. On August 27, 2007, plaintiff submitted a grievance to DOC Director's Designee Debbie Morton regarding the unanswered RTS to Deputy Warden Morgan and asking for an answer to the grievance. *Id.* at 9. On September 7, 2007, Director's Designee Morton responded and advised that plaintiff's grievance was being investigated. *Id.* at 8. Warden Sirmons returned plaintiff's grievance on September 19, 2007, because each grievance can address only one issue, and plaintiff's grievance raised more than one issue. *Id.* at 7. Plaintiff was advised that he had ten calendar days to submit a proper grievance in accordance with OP-090124. *Id.* On September 21, 2007, the facility/unit head returned plaintiff's Grievance # 07-151 unanswered because it raised two issues: (1) no response to plaintiff's RTS, and (2) plaintiff's placement in administrative segregation without any reason or a hearing. *Id.* at 6.

On September 25, 2007, plaintiff submitted another grievance to Warden Sirmons, complaining that his placement in administrative segregation without notice or a hearing violated DOC policies. *Id.* at 5. He requested immediate removal from administrative segregation and restoration to Level 4. *Id.* He also asked to be moved from segregation to a cell house and to be transferred to a medium security facility. *Id.* Warden Sirmons returned the grievance on October 5, 2007, because no RTS was attached, and gave plaintiff ten calendar days to file a proper grievance. *Id.* at 4. The Reviewing Authority's Grievance Response, also dated October 5, 20078, reiterated that the grievance was returned because there was no RTS. *Id.* at 2-3.

Debbie Morton, Manager of the DOC Administrative Review Unit, states by affidavit that she has reviewed plaintiff's offender grievance records [Docket #22, Part D at 2]. The records reflect that plaintiff sent correspondence on numerous occasions from June 2007

through January 2008. *Id.* A review of the documents indicates plaintiff failed to comply with DOC procedures in all instances. *Id.* at Attachments 1-10.

Plaintiff argues in his response to Defendant Carter's motion [Docket #92 at 12] that he exhausted his administrative remedies with respect to his claims against Carter through the Internal Affairs Administrative Reviewing Authority, the Risk Management Division, and the Attorney General's Office, as evidenced by documents in the special report [Docket #22, Part A, Attachments 7-9]. Those documents indicate that on June 1, 2007, the facility head responded to plaintiff's claim concerning the reason for his transfer and the investigation of Defendant Sanders [Docket #22, Part A, Attachment 9]. There is no indication, however, that plaintiff appealed within 15 days to the DOC Director or the Chief Medical Officer, as required by DOC policy.

After careful review, the court finds plaintiff has failed to exhaust his administrative remedies, as required by 42 U.S.C. § 1997e(a).

**ACCORDINGLY,** Defendant Greg Province's motion to dismiss [Docket #79], Defendant Steve Carter's motion to dismiss [Docket #87], and Defendant Charles Sanders' second motion to dismiss [Docket #105] are GRANTED, and this action is DISMISSED in its entirety. All remaining pending motions are DENIED as moot.

**IT IS SO ORDERED** this 19th day of March 2010.

RONALD A. WHITE
UNITED STATES DISTRICT JUDGE